# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

WILLIAM HERIOT,                                      Civil Action No. 1:06-cv-355
      Petitioner,

                                      Dlott, J.

      vs.                                             Black, M.J.

SAM TAMBI, WARDEN,                                   **REPORT AND**
      Respondent.                                    **RECOMMENDATION**

Petitioner, a state prisoner, brings this case *pro se* seeking a Writ of Habeas Corpus

pursuant to 28 U.S.C. § 2254. The case is now before the Court upon the petition (Doc. 1),

respondent's return of writ and exhibits thereto (Doc. 3), and petitioner's traverse. (Doc. 16).

## I.      PROCEDURAL HISTORY

This case involves the following facts, as summarized by the Twelfth District Ohio Court

of Appeals:[1]

> {¶ 2} In September 2003, Detective Bill Couch of the Warren County Drug Task
> Force received a phone call from Agent Tom Engle of the Montgomery County
> Combined Agency for Narcotics Enforcement (CANE), informing him about an
> individual named Brenda Johnson, who was then incarcerated in the Warren
> County Jail. Engle told Couch that Johnson had information about appellant
> involving drug trafficking. As a result of this conversation, Couch decided to set
> up a "reverse buy" between appellant and an undercover officer. In furtherance
> of this plan, Couch arranged to have Johnson released from jail. He also enlisted
> the aid of CANE Detective Diane Taylor. Couch's plan called for Johnson to
> have appellant come to her apartment, which appellant owned, at 525 Chapman
> Street in Waynesville, Ohio, on October 20, 2003. Detective Taylor, posing as an
> ex-convict named "Sharon," was to come to the apartment on that date and sell
> appellant some crack cocaine.

> {¶ 3} On October 20, 2003, Taylor traveled to Johnson's apartment, wearing a

---

[1] The factual findings of the state appellate court are entitled to a presumption of correctness in the absence
of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *see McAdoo v. Elo*, 365 F.3d 487, 493-94
(6th Cir. 2004).

wireless transmitter that was being monitored by Couch and his fellow officers, who followed Taylor to the apartment. When Taylor arrived at the apartment, Johnson and appellant were there. Appellant told Taylor that he wanted only one ounce at a time. Using a scale that appellant had brought, Taylor weighed out one ounce of crack cocaine. She then gave the crack cocaine to appellant, and he paid her $700 for it. After Taylor talked with appellant and Johnson for a few minutes, she left the apartment. About 15 seconds later, approximately ten officers, including Couch, converged on the apartment. Appellant was immediately arrested. The police seized the cocaine that appellant had just purchased from Taylor. The police also arrested Johnson and Taylor to maintain their cover. Appellant was taken down to the police station where he was given his *Miranda* warnings and then interrogated by Couch about the events that had just transpired.

(Doc. 3, Exh. 22 at 2-3).

Petitioner was indicted by the September 2003 Term of the Warren County, Ohio Grand Jury on one count of possession of cocaine in violation of Ohio Rev. Code § 2925.11(A). (Doc. 3, Exh. 1). On February 4, 2004, petitioner, through counsel, filed a motion requesting that the trial court order the testimony of the Miami Valley Crime Laboratory with regard to the determination made involving the substance (cocaine) obtained when he was arrested and requested that the State provide him with a sample of the substance for an independent analysis. (Doc. 3, Exh. 2). On February 9, 2004, counsel filed several motions on petitioner's behalf: a motion requesting that all personal property seized from the residence be returned; a motion to prohibit the use of contraband and/or to suppress contraband seized from petitioner's residence; a motion to compel the Warren-Clinton Drug and Strategic Operations Drug Task Force to provide him with a copy of the written internal control policy; and a motion to suppress all evidence and statements purportedly illegally seized from petitioner. (Doc. 3, Exhs. 3-6).

On March 10 and April 7, 2004, the State filed responses to the motions. (Doc. 3, Exhs. 7-9).

The trial court held a hearing on petitioner's motions to suppress on April 29, 2004.

2

Subsequent to the hearing, counsel for petitioner filed three supplemental pleadings in support of his motions to suppress. (Doc. 3, Exhs. 10-12).  On May 11, 2004, the trial court denied petitioner's motions (Doc. 3, Exh. 13):

> Initially, the trial court determined that appellant had "a reasonable expectation of privacy" in the apartment and thus had standing to challenge the search of the premises, since he owned the apartment and "came and went [from it] as he pleased, although it was not his primary residence[,]" while Johnson merely lived there, rent-free, with his approval.  The trial court then determined that the police "had more than the usual probable cause" to arrest appellant since "[t]here was an absolute certainty that a crime had been committed[.]"  The trial court also found that it could be "inferred" that appellant and Johnson had consented to Detective Taylor's entry into the premises; that their consent was not withdrawn by Taylor's walking outside; and that because Taylor had permission to enter, her fellow officers "could enter for her protection and safety."  The trial court further found that "exigent circumstances" existed for the warrantless seizure of the contraband, because the drugs that the police had just delivered "could easily be either consumed or flushed down the toilet."

(Doc. 3, Exh. 22 at 4).

On May 17, 2004, petitioner was found guilty as charged after a two-day jury trial. (Doc. 3, Exh. 14).  On May 20, 2004, petitioner was sentenced to a mandatory five years imprisonment and fined $10,000.00. (Doc. 3, Exhs. 15-17).

Petitioner, through new counsel, filed a timely appeal to the Twelfth District Court of Appeals and presented two assignments of error:

> 1.  The trial court erred in failing to grant Defendant's motions to suppress evidence filed on February 9, 2004 and March 10, 2004.
>
> 2.  Appellant was denied a fair trial as a result of the cumulative effects of errors.

(Doc. 3, Exh. 19).  On December 8, 2004, an addendum to petitioner's brief was filed. (Doc. 3, Exh. 20).  The State filed a brief in response. (Doc. 3, Exh. 21).  On May 16, 2005, the Court of Appeals affirmed the judgment of the trial court. (Doc. 3, Exh. 22).

3

Petitioner filed a *pro se* appeal to the Supreme Court of Ohio on June 27, 2005. (Doc. 3, Exh. 24).  Petitioner did not raise specific propositions of law *per se*, but argued that his Fourth Amendment rights were violated by the warrantless search and seizure; that his "fifth amendment rights were denied in that he was incarcerated without due process;" and that he "was never informed of the nature or cause of the accusations nor was he confronted with any witnesses against him in violation of his sixth amendment rights." (Doc. 3, Exh. 25 at 2).  The State filed a waiver of memorandum in response. (Doc. 3, Exh. 26)  On October 5, 2005, the Supreme Court of Ohio declined jurisdiction and dismissed the appeal as not involving any substantial constitutional question. (Doc. 3, Exh. 27).

On October 17, 2005, petitioner filed a motion requesting the Supreme Court of Ohio to reconsider the dismissal of his appeal. (Doc. 3, Exh. 28)  On December 14, 2005, the Supreme Court of Ohio denied petitioner's motion. (Doc. 3, Exhs. 29, 30).

On May 9, 2006, petitioner filed a petition for writ of habeas corpus in this federal court. The Petition for Writ of Habeas Corpus raises the following grounds for relief:

**GROUND ONE**:  4th Amendment.

I never granted entry, nor did anyone to any police at any time to my apartment. It was ruled that I alone had the right to grant entry.
I never met nor talked with any police prior to their unlawful entry to my apartment.
I never was predisposed to enter into any transaction except to pay a blackmailed and no testimony to contradict this was given.
Contraband was planted in my apartment by police and used to create exigent circumstances as verified by the court.
The court ruled that a warrant was not required as evidence, police planted was found AFTER unlawful entry.
No proof of any wrong doing was submitted to the court except self-serving statements made by police.
No probable cause or exigent circumstance existed to justify the unlawful search. Per transcript, No fear of harm to agent (who was outside), no

4

crime of violence, armed subject, fear of escape, hot pursuit, emergency,
or of distruction (sic) of evidence.
See: Dorman vs United States (c.a.d.c. 1970), 435F2D385
State vs Bowe 52, Ohio App. 3D 112, 114, 557 NE2D139 (9th
Dist. Summet County 1999.
State vs Scott, Ohio App. 3D 253, 733 NE 2D (6th Dist. Erie Co.
1994)
State vs Simms 127 Ohio App 3D 668, 712 NE 2D 513
State vs Jenkins (1995) 104 Ohio App 3D 265, 266 NE 2D 806
The Court, in their opinion, without any evidence, declaired (sic) that planted
contraband would be destroyed and was admitted to not be a problem
during the trial.

**GROUND TWO**:  Intrapment (sic).

The two prong test

Government Inducement
     I never talked to anyone about drugs.
     Government planted drugs in my apartment.
     Government solicited me to buy drugs.
     I never touched drugs or passed money to anyone.
     Government induced a known drug user/dealer, by
     releasing her from jail, to set this up using blackmail as the
     motive and intrap me.
     Government became part of this intrapment (sic) and blackmail
     scheme to lure me to the apt, using blackmail as the motive.

Lack of Predisposition to Engage in a Crime.
     I never talked with anyone about drugs.
     No testimony given wherein predisposition was shown.
     No history of my ever being part of any drug transaction
     was given in testimony.

**GROUND THREE:** Brady Law Violation.

**Supporting FACTS:** Prosicutor (sic) was asked to produce evidence that was
on his desk and he did not.

**GROUND FOUR:** Ineffective Counsel.

Both lawyers did not question the interigation (sic) tapes regarding the time
lapes (sic) on the tapes, (52 minutes).
My lawyer hired another lawyer without my approval who was to do leg

5

work only but ended up being the main lawyer and I do not believe that he
is an experienced criminal lawyer. My lawyer just backed off the case
and let this now one handle it all.
They did not call any witnesses and I had given them at least a dozen.
They did not call the blackmailed. I was not given the right to confront
my accuser.
They put me on the stand and were to have me explain the interigation (sic)
tape. We went over all this before the trial and I had given them a line for
line explaination (sic) but they just had me tell my story and then they reated (sic)
the case. I was in shock!!!
They would not tell me why my suppression hearing went against me and
simply told me I lost hours before the trial thus I was not given the chance
to collest (sic) my thoughts as to how I would Proceed.
I requested a change in venue and they would not present it.
They did not go into probable cause or exigent circumstances.
They did not request that the evidence be tested. I have no idea what the
stuff was.
They did not question why I was targeted.
They did not get into the trial a police report that clearly stated that I was
being blackmailed.
My lawyer had a DWI charge and it was dropped. He also was an acting
Judge and represented the people in fornt (sic) of him as he was acting as the
Judge in their cases. The court dropped all charges and therefore I believe
that he had an obligation to the court not to press my case.

**GROUND FIVE:** 5th AMENDMENT

I was denied due process and the police set up a manufactured crime as
admitted by them and the Judge.
The Judge admitted that the police brought in drugs without my
knowledge.
Police admitted that they had the blackmailed get me to come to pay
blackmail money as the motivation to get me there.
They intended to intrap (sic) me into an illegal act.
I was tricked into making statements that, by manipulating the tapes, made
it look like I was into drugs.

6

**GROUND SIX:** 6th AMENDMENT

I was denied the opportunity to examine any witnesses or accusers.
There was no injured party as is required.

(Doc. 1).


## II.  STANDARD OF REVIEW

On federal habeas review, the factual findings of the state appellate court are entitled to a presumption of correctness in the absence of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1).  *See McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001).  In addition, the decision of the Ohio Court of Appeals is binding on this Court unless it is contrary to clearly established law or was based on an unreasonable determination of the facts of record.  *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998).

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104- 132, 110 Stat. 1214 ("AEDPA"), a writ of habeas corpus may not issue with respect to any claim adjudicated on the merits in state court unless the adjudication either:

1.       resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2.       resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The phrases "contrary to" and "unreasonable application" have independent meanings:

A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the law set forth in ... [Supreme Court] cases, or if it decides a case differently that we have done on a set of materially

> indistinguishable facts.  The court may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle from ... [the Supreme Court's] decisions but unreasonably applies it to the facts of a particular case.  The focus on the latter inquiry is whether the state court's application of clearly established federal law is objectively unreasonable ... and an unreasonable application is different from an incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694 (2002)(citation omitted).


## III.  GROUND ONE IS WITHOUT MERIT.

Ground One of the petition asserts that petitioner's conviction was obtained by use of evidence gained as a result of an illegal search in violation of the Fourth Amendment.  Petitioner contends there was no probable cause for the search nor exigent circumstances justifying the warrantless search of his apartment.  In overruling this assignment of error, the Ohio Court of Appeals stated:

> {¶ 10} Appellant's principal argument under this assignment of error is that the trial court erred in denying his Motion to Suppress Evidence, wherein he challenged the police's warrant-less entry into his apartment.  He argues that the police lacked both probable cause and exigent circumstances to justify their warrantless entry and search of the premises.  He further argues that while the trial court's inference that he and Johnson invited Detective Taylor into the apartment, thereby rendering her entry consensual, "may be correct," it would be "improper to thereafter infer that the other 10 or 11 officers were also invited or that those other officers also entered with consent."  We find appellant's argument unpersuasive.

> {¶ 11} Where a defendant knowingly and voluntarily invites an undercover law enforcement officer into his residence for the purpose of conducting illegal business, the defendant, by extending the invitation, voluntarily exposes himself to a warrantless arrest. United States v. Ruiz-Altschiller (C.A.8, 1982), 694 F.2d 1104, 1107.  Furthermore, where a defendant consents to an undercover officer's or informant's entry into his premises, and at that point the undercover officer or informant establishes the existence of probable cause to effectuate an arrest or search, then that officer or informant may, in turn, allow other police officers to enter to make the arrest or search. United States v. Pollard (C.A.6), 215 F.3d 643, 648-649.  This rule is known as the doctrine of "consent-once-removed." Id. at

648.  It applies where an undercover officer or informant (1) enters a defendant's premises at the express invitation of someone who has authority to consent to the entrance; (2) at that point, established the existence of probable cause to effectuate an arrest or search; and (3) immediately summons help from other officers to effectuate the arrest and search. Id.

{¶ 12} Applying these principles to this case, it was apparent from the evidence offered at the suppression hearing that the undercover officer in this case, Detective Taylor, entered the apartment at appellant's and Johnson's express invitation to sell appellant crack cocaine.  Once inside, she sold appellant approximately one ounce of crack cocaine, which, at that point, gave her ample probable cause to arrest appellant.  Finally, when she made the sale, she left the apartment, thereby signaling to her fellow officers that the sale had been made. Taylor's fellow officers, including Detective Couch, who had been monitoring the transaction over a wireless transmitter, converged on the property, arresting appellant and seizing the crack cocaine he had just purchased.  Taylor's actions were permissible because appellant and Johnson consented to her entry, and Couch's and the remaining officers' actions were permissible under the doctrine of consent-once-removed. See Pollard, 215 F.3d at 648-649.  Thus, the trial court did not err in overruling appellant's motion to suppress evidence on Fourth Amendment grounds.

(Doc. 3, Exh. 22 at 5-7).

Federal courts will not address a Fourth Amendment claim upon habeas review if the petitioner had a full and fair opportunity to litigate the claim in state court and the presentation of the claim was not thwarted by any failure of the state's corrective processes. *Stone v. Powell*, 428 U.S. 465, 494-95 (1976).

A court must perform two distinct inquiries when determining whether a petitioner may raise a claim of illegal search or seizure in a habeas action.  First, the "court must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a Fourth Amendment claim.  Second, the court must determine whether presentation of the claim was in fact frustrated because of a failure of that mechanism." *Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000), *cert. denied*, 531 U.S. 1089 (2001) (quoting *Riley v. Gray*, 674 F.2d

522 (6th Cir. 1982)).

Ohio provides an adequate procedural mechanism for the litigation of Fourth Amendment claims in the form of a pretrial motion to suppress pursuant to Ohio R. Crim P. 12, and a direct appeal as of right from an order denying a motion to suppress pursuant to Ohio R. App. P. 3 and 5. *Riley*, 674 F.2d at 526.  Therefore, under the first inquiry, Ohio's mechanism for the resolution of Fourth Amendment claims, in the abstract, presents the opportunity to raise such claims. *Id.*

Petitioner presented his Fourth Amendment claim to the trial court, the Ohio Court of Appeals, and the Supreme Court of Ohio.  The trial court held a suppression hearing (Doc. 3, Exh. 31) and issued a written opinion. (Doc. 3, Exh. 13).  Petitioner appealed to the Ohio Court of Appeals which, as discussed above, found no merit to the claim. (Doc. 3, Exh. 22).  The Supreme Court of Ohio denied leave to appeal because it was not persuaded to review the issue. (Doc. 3, Exh. 27).  Petitioner does not allege he lacked a full and fair opportunity to present his Fourth Amendment claim to the state courts.  Nor has he shown any failure of Ohio's procedural mechanism which prevented him from litigating his Fourth Amendment claim.  *See Seymour v. Walker*, 224 F.3d 542, 553 (6th Cir. 2000) ("Seymour does not, and cannot, claim that the State of Ohio did not provide her with a full and fair opportunity to litigate her Fourth Amendment claims; indeed, she did so in a suppression hearing before trial.").  Accordingly, any claim concerning the validity of the search of petitioner's apartment is not cognizable on habeas review pursuant to *Stone v. Powell*.  Therefore, petitioner's first ground for relief does not warrant federal habeas relief in this matter.

To the extent petitioner also contends that the trial court erred in denying his motion to prohibit use of contraband and/or suppress the contraband in violation of Ohio's "reverse buy"

statute, Ohio Rev. Code § 3719.141, his claim is not cognizable in federal habeas corpus.  A

federal court may review a state prisoner's habeas petition only on the ground that the

challenged confinement violates the Constitution, laws or treaties of the United States, and not

"on the basis of a perceived error of state law." 28 U.S.C. § 2254(a); *Pulley v. Harris,* 465 U.S.

37, 41 (1984); *see also Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991) ("it is not the province of

a federal court to reexamine state-court determinations on state-law questions").  A violation of

state law is not cognizable in federal habeas corpus unless such error amounts to a fundamental

miscarriage of justice or a violation of the right to due process in violation of the United States

Constitution.  *See Floyd v. Alexander,* 148 F.3d 615, 619 (6th Cir.), *cert. denied,* 525 U.S. 1025

(1998); *Serra v. Michigan Dep't of Corrections,* 4 F.3d 1348, 1354 (6th Cir. 1993), *cert. denied,*

510 U.S. 1201 (1994).

In the instant case, petitioner argued this claim in the state courts solely as a matter of

state law and the Ohio Court of Appeals, the last state court to issue a reasoned opinion, likewise

relied solely on state law in rejecting the claim. (Doc. 3, Exh. 19 at 11-2; Exh. 22 at 7-8)  It is

the obligation of this Court to accept as valid a state court's interpretation of the statutes and

rules of practice of that state. *Estelle,* 502 U.S. at 67-68.  *Accord Duffel v. Dutton,* 785 F.2d 131,

133 (6th Cir. 1986).  Since petitioner has failed to demonstrate how this alleged error constitutes

a fundamental miscarriage of justice or a violation of his right to procedural due process of law,

the state law claim asserted in Ground One of the petition is not cognizable on habeas review

and should be dismissed.

11

## IV.  GROUNDS TWO THROUGH SIX ARE PROCEDURALLY DEFAULTED AND WAIVED.

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must first fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b)(1), (c); *see also Anderson v. Harless*, 459 U.S. 4, 6 (1982) (*per curiam*); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).  A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall*, 757 F.2d 94, 97, 99-100 (6th Cir.), *cert. denied*, 474 U.S. 831 (1985).  If the petitioner fails to do so, he may have waived the unraised claims for purposes of federal habeas corpus review.  *See Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989).

The doctrine of procedural default provides:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default, and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  Such a default may occur if the state prisoner files an untimely appeal, *Coleman*, 501 U.S. at 750, if he fails to present an issue to a state appellate court at his only opportunity to do so, *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994), or if he fails to comply with a state procedural rule that required him to have done something at trial to preserve his claimed error for appellate review, *e.g.*, to make a contemporaneous objection, or

12

file a motion for a directed verdict. *United States v. Frady*, 456 U.S. 152, 167-69 (1982); *Simpson v. Sparkman*, 94 F.3d 199, 202 (6th Cir. 1996).

Federal courts may not consider "contentions of federal law that are not resolved on the merits in the state proceeding due to petitioner's failure to raise them as required by state procedure." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  If petitioner fails to fairly present his claims through the requisite levels of state appellate review to the state's highest court, or commits some other procedural default to preclude review of the merits of petitioner's claims by the state's highest court, and if no avenue of relief remains open or if it would otherwise be futile for petitioner to continue to pursue his claims in the state courts, the claims are subject to dismissal with prejudice as waived.  *See O'Sullivan,* 526 U.S. at 847-48; *Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th  Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989).   The Sixth Circuit applies a four-part test to determine if a claim is procedurally defaulted:

> (1) the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule; (2) the court must determine whether the state courts actually enforced the state procedural sanction; (3) it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim; and (4) if the court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner is required to demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001), *cert. denied*, 535 U.S. 1031 (2002) (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)).

In determining whether a state court rested its holding on a procedural default so as to bar federal habeas review, "the last state court rendering a judgment in the case must have based its

judgment on the procedural default." *Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *Couch v. Jabe*, 951 F.2d 94, 96 (6th Cir. 1991)). Normally, a federal habeas court will find that a petitioner procedurally defaulted if the last state court rendering a decision makes a plain statement to that effect. *Harris,* 489 U.S. at 261.  No such statement is necessary, however, if the petitioner failed to present the relevant issues to the state court. *Id.* at 263 n. 9.  *See also Teague v. Lane*, 489 U.S. 288, 297-298 (1989) (plurality opinion)("The rule announced in *Harris v. Reed* assumes that a state court has had the opportunity to address a claim that is later raised in a federal habeas proceeding.").  In that event, the federal habeas court may hold the claim procedurally defaulted "if it is clear that the state court would hold the claim procedurally barred." *Harris*, 489 U.S. at 263 n.9.

If, because of a procedural default, a petitioner can no longer present his claims to a state court, he has waived them unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional errors, or that failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *see also Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

A "fundamental miscarriage of justice" occurs only in the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 495-96; *see also Schlup v. Delo,* 513 U.S. 298, 327 (1995).  To be credible, such a claim "requires petitioner to support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial." *Schlup,* 513 U.S. at 324.

14

To obtain habeas review of the merits of a procedurally-defaulted claim under the "actual innocence" exception, the otherwise-barred petitioner "must show it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt" in light of all the evidence, "including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial." *Id.* at 327-28.

In the instant case, the Court finds that Grounds Two through Six of the petition are procedurally defaulted and waived.  On appeal to the Ohio Court of Appeals, petitioner raised a Fourth Amendment claim and a claim that he was "denied a fair trial as a result of the cumulative effects of errors." (Doc. 3, Exh. 19).  This first claim was addressed in Ground One of the petition.  The second claim, although couched in terms of "cumulative errors," in reality challenged the alleged discrepancies in the testimony of Detective Taylor and trial counsel's failure to call to the jury's attention such discrepancies. (Doc. 3, Exh. 22 at 9-10).  However, petitioner never raised this second claim in the Supreme Court of Ohio.  Nor were any of the other claims alleged in Grounds Two through Six of the instant petition for writ of habeas corpus raised on appeal to the Ohio Court of Appeals.  Because petitioner failed to provide the state courts with the opportunity to correct the alleged errors raised in Grounds Two through Six of the petition, he has waived such claims absent a showing of cause for his default and actual prejudice as a result of the alleged error, or that failure to consider the claims will result in a "fundamental miscarriage of justice."  *See Coleman,* 501 U.S. at 750; *see also Murray,* 477 U.S. at 485; *Isaac,* 456 U.S. at 129; *Sykes,* 433 U.S. at 87.

As cause for the procedural default, petitioner contends that appellate counsel failed to

consult with him before he filed his appellate brief and failed to raise on appeal the issues requested by petitioner. (Doc. 16 at 45).  The ineffective assistance of counsel may constitute cause for a procedural default, so long as such claim has been presented to the state courts, and is not itself procedurally defaulted. *Edwards v. Carpenter*, 529 U.S. 446, 452-53 (2000) (citing *Murray,* 477 U.S. at 488-89).

Here, however, petitioner procedurally defaulted his ineffective assistance of appellate counsel claim because he never presented this claim to the state courts.  It is well settled that "federal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts." *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000), *cert. denied,* 532 U.S. 958 (2001).  *See also Jacobs v. Mohr,* 265 F.3d 407, 415 (6th Cir. 2001). The "fair presentation" requirement requires a habeas corpus petitioner to present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law. *McMeans,* 228 F.3d at 681; *Franklin v. Rose,* 811 F.2d 322, 325 (6th Cir. 1987); *see also Prather v. Rees,* 822 F.2d 1418 (6th Cir. 1987).

A review of the record indicates that petitioner raised the argument that he was denied the effective assistance of appellate counsel for the first time in this federal habeas corpus proceeding.  Because petitioner failed to present his ineffective assistance of appellate counsel claim to the state courts, he waived this claim for purposes of federal habeas corpus review and is precluded from asserting the claim as cause for his procedural default of Grounds Two through Six of his federal habeas petition.  *See Edwards*, 529 U.S. at 452.

Petitioner has not provided any other explanation as "cause" for his procedural default. He also has not demonstrated that a "fundamental miscarriage of justice" will occur, or in other

16

words, that the alleged constitutional violation "probably resulted in the conviction of one who is actually innocent" of the crimes charged, if such claims are not considered on the merits herein. *See Murray,* 477 U.S. at 495-96; *see also Schlup v. Delo,* 513 U.S. 298, 327 (1995); *cf. Souter v. Jones,* 395 F.3d 577, 597-602 (6th Cir. 2005).

Accordingly, the undersigned concludes that petitioner is not entitled to habeas relief based on the claim alleged in Grounds Two through Six of the petition because he has waived such claims of error due to his procedural default.

## IT IS THEREFORE RECOMMENDED THAT:

1.  Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be DENIED with prejudice.

2.  A certificate of appealability should not issue with respect to Ground One of the petition because petitioner has failed to make a substantial showing of the denial of a constitutional right based on this claim.  *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3.  A certificate of appealability should not issue with respect to Grounds Two through Six of the petition which this Court has concluded are waived and thus barred from review on procedural grounds because under the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason would not find it debatable whether this Court is correct in its procedural ruling" as required under the first prong of the *Slack* standard.[2]

---

[2]       Because this Court finds that petitioner has not met the first prong of the *Slack* standard, it need not address the second prong of *Slack* as to whether "jurists of reason" would find it debatable whether petitioner stated a valid constitutional claim.  *See Slack,* 529 U.S. at 484.

    4.  The Court certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith" and, therefore, DENY petitioner leave to proceed on appeal *in forma pauperis* upon a showing of financial necessity.  *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).


Date:  __9/13/2007_____                __s/Timothy S. Black_____
      KI                                     Timothy S. Black
                                         United States Magistrate Judge

18

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

WILLIAM HERIOT,                                    Civil Action No. 1:06-cv-355
     Petitioner,

                                        Dlott, J.

     vs.                                          Black, M.J.

SAM TAMBI, WARDEN,
     Respondent.

## NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Black, United States Magistrate Judge, in the above-entitled habeas corpus action.  Pursuant to Fed. R. Civ. P. 72(b), which may be applied in this action under Rules 1 and 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, any party may object to the Magistrate Judge's Report and Recommendation within ten (10) days after being served with a copy thereof.   Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s).  Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections.  *See* Fed. R. Civ. P. 72(b).  A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal.  *See Thomas v. Arn,* 474  U.S. 140 (1985); *United States v. Walters*, 638

19

F.2d 947 (6th Cir. 1981).